UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| MILES ZAREMSKI, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | 11 C 5221 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| AMERICAN ARBITRATION ASSOCIATION, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Miles J. Zaremski worked as an arbitrator on a series of arbitrations pursuant to an agreement with Defendant American Arbitration Association, Inc. ("AAA"). The two parties to the arbitrations failed to pay Zaremski's monthly invoices, Zaremski refused to proceed with the arbitrations, AAA removed him as an arbitrator, and Zaremski sued AAA, seeking to recover the unpaid balance of his invoices as well as the fees he lost due to his allegedly wrongful removal. AAA has moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). The motion is granted in part and denied in part.

**Background**

The well-pleaded facts alleged in the complaint are assumed true on a Rule 12(b)(6) motion. *See Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010). Also pertinent at the Rule 12(b)(6) stage are exhibits attached to the complaint, *see* Fed. R. Civ. P. 10(c); *Witzke v. Femal*, 376 F.3d 744, 749 (7th Cir. 2004), and exhibits attached to the parties' briefs that are "referred to" in the complaint and "central to [Plaintiff's] claim," *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1248 (7th Cir. 1994). *See Hecker v. Deere & Co.*, 556 F.3d

575, 582 (7th Cir. 2009). To the extent an exhibit contradicts the complaint's allegations, the exhibit takes precedence. *See Forrest v. Universal Sav. Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2007).

Zaremski is an arbitrator with a specialty in Medicare. Doc. 1 at ¶ 5. AAA invited Zaremski to arbitrate a set of ten Medicare Demonstration Project cases between the State of New York and the federal Center for Medicare & Medicaid Services ("CMS"), which were scheduled to commence the week of February 15, 2011. *Id*. at ¶ 6. Zaremski indicated that he was interested. *Id*. at ¶ 11. The AAA case manager, Karen Fontaine, informed Zaremski that the cases were governed by an AAA rule providing that "billing arrangements must be made through the AAA and not with any party." *Id*. at ¶ 13. In November 2010, AAA sent Zaremski his appointment papers, consisting of a Notice of Appointment and Notice of Compensation Agreement. *Id*. ¶¶ 6, 15-16, 18; Doc. 16 at 29-34.

The Compensation Agreement provided that the parties to the arbitrations were responsible for paying Zaremski, and exculpated AAA from liability for any non-payment: "Payment for your compensation is the obligation of the parties and it is understood that the [AAA] has no liability, direct or indirect, for such payment." Doc. 16 at 30. The agreement then set forth the procedures by which Zaremski would be paid, and reiterated that AAA was not liable for any non-payment:

> Unless you specify otherwise, the parties are advised that deposits are due 30 days prior to the first hearing. No later than two weeks prior to the hearing, the Case Manager will advise you of the total amount on deposit. Should the parties fail to make deposits in a timely manner, you must determine whether to go forward or suspend the proceedings until such time as deposits have been made. …

> …
>
> … Your bills should be submitted in a format that is presentable to the parties, should detail the dates on which the charges were incurred and must correspond with the terms of compensation outlined herein. Upon receipt, the AAA will release payment from the amounts deposited by the parties. Should there be insufficient funds on deposit, you will not receive payment until the parties have made additional deposits. …
>
> In the event your Award is delivered prior to payment by the parties of the agreed upon compensation, the [AAA] is authorized but not obligated to seek to collect these monies on your behalf by all lawful means to represent you in any action or proceeding for such recovery and to file a claim in any bankruptcy or insolvency proceeding for such monies. The [AAA] may prosecute and receive any recovery on behalf of the undersigned and has full authority to compromise or settle such claims as may be, in its discretion, appropriate. However under no circumstances whatsoever will the [AAA] be liable for any failure to collect any or all the monies due.

*Ibid*. Prior to executing the appointment papers, Zaremski told Fontaine that he would accept the appointment only "if his normal billing for fees and costs are followed as reflected in monthly billing to be paid within thirty days thereafter." Doc. 1 at ¶ 15. Fontaine agreed, and Zaremski signed the Compensation Agreement, but only after adding "Billing to be monthly per arrangement with the AAA." *Ibid*.; *see also* Doc. 16 at 31.

In late November 2010, Zaremski began preparing for the upcoming arbitrations. On December 1, 2010, Zaremski tendered invoices to Fontaine for his November 2010 work, expecting to be paid within thirty days. Doc. 1 at ¶ 20. Zaremski subsequently submitted monthly invoices for his work in December 2010, January 2011, February 2011, and March 2011. *Id*. at ¶ 22. The total bill came to $135,072.

Payment of the invoices was repeatedly delayed, prompting much back and forth between Zaremski and AAA. On December 21, 2010, Fontaine emailed Zaremski that she had "invoiced

the parties for [November 2010], there should not be a problem getting paid for the time already spent. So keep sending the invoices as you incur time." *Id*. at ¶ 21. On January 7, 2011, she informed Zaremski that he should send all invoices to AAA and not the parties; she also told him for the first time that "the government does not provide the AAA with deposits by which Zaremski would receive his compensation." *Id*. at ¶¶ 24-25. One week later, Fontaine emailed Zaremski that the State of New York did not foresee any problems with the payment and that she would update him as soon as AAA received the "necessary forms" from the State. *Id*. at ¶ 26. On January 26, Fontaine emailed Zaremski that she had received the forms and was processing them. *Id*. at ¶ 27. Two days later, she informed Zaremski that she had sent the forms to the State. *Id*. at ¶ 28.

On February 4, 2011, not having received any payment, Zaremski entered an order continuing the proceedings until March 22. *Id*. at ¶ 31. On February 8, Fontaine emailed Zaremski, saying that she was processing the latest invoice for January 2011, noting that the State had been reviewing an earlier invoice, and assuring him that "invoicing will be completed this week." *Id*. at ¶ 32. Three days later, she emailed Zaremski that "[t]he invoices have been submitted to both CMS and NY. I have calls and emails out to both (sic) agency to get update as soon as I receive update I will advise." *Id*. at ¶ 33. On March 8, Fontaine reiterated to Zaremski that she had been following up with the parties about payment. *Id*. at ¶ 34.

On March 10, 2011, Zaremski cancelled the arbitrations on the ground that he had not been paid. *Id*. at ¶ 35. On March 15, Fontaine emailed Zaremski to say that she was processing his most recent invoices for February 2011. *Id*. at ¶ 36. A couple weeks later, counsel for AAA told Zaremski that the invoices contained errors that "must be corrected before final invoices can

be provided to the parties for processing." *Id*. at ¶ 37. On May 12, at AAA's request, Zaremski resubmitted all of his invoices in a different format. *Id*. at ¶ 22. On July 30, AAA issued a check to Zaremski for $62,692.50. *Id*. at ¶ 38. In the meantime, on June 3, 2011, AAA removed Zaremski as the arbitrator for the cases. *Id*. at ¶ 70.

Zaremski filed this suit on August 1, 2011. In December 2011, AAA tendered another check to Zaremski for $62,692.50; AAA believes that this is the balance due Zaremski on his invoices, while Zaremski claims that the two checks are $9,687 short. Docs. 25-1, 30. In addition to pursuing that alleged balance, Zaremski seeks the fees he lost due to AAA's allegedly improper removal of him from the arbitrations.

## Discussion

Zaremski's complaint purports to state seven counts, all sounding in state law. AAA has moved to dismiss all seven counts.

### I. Quasi-Contract Claims (Counts II, III, and IV)

The complaint does not articulate a straightforward breach of contract claim for what Zaremski believes to be the unpaid portion of his invoices. This omission no doubt reflects Zaremski's recognition that the Compensation Agreement unambiguously exculpates AAA from such liability. In an effort to avoid the exculpatory clause, the complaint in Counts II through IV sets forth three quasi-contract causes of action—quantum meruit, promissory estoppel, and unjust enrichment—that seek to recover the unpaid amounts.

Illinois law holds that a plaintiff may not pursue quasi-contract claims if his relationship with the defendant is governed by an express contract. *See Hess v. Kanoski & Assocs.*, 668 F.3d 446, 455 (7th Cir. 2012) (quantum meruit and unjust enrichment); *Dumas v. Infinity Broad.*

*Corp.*, 416 F.3d 671, 677, 678 n.9 (7th Cir. 2005) ("Under Illinois law, a claim for promissory estoppel will only succeed where all the other elements of a contract exist, but consideration is lacking. … As this court has noted, to allow the doctrine of promissory estoppel to be invoked where consideration exists, 'becomes a gratuitous duplication or, worse, circumvention of carefully designed rules of contract law.'") (quoting *All-Tech Telecom, Inc. v. Amway Corp.*, 174 F.3d 862, 869 (7th Cir. 1999)); *People ex rel. Hartigan v. E & E Hauling, Inc.*, 607 N.E.2d 165, 177 (Ill. 1992) ("Because unjust enrichment is based on an implied contract, where there is a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application.") (internal quotation marks omitted). Zaremski's relationship with AAA is governed by the Compensation Agreement. Doc. 1 at ¶ 15; Doc. 16 at 31. It follows that the quasi-contract claims are barred.

Zaremski opposes this result by arguing that the Compensation Agreement is invalid for lack of consideration. The argument is incorrect, for the agreement imposed identifiable obligations on both parties. Zaremski agreed to arbitrate the cases, and AAA agreed to allow Zaremski to arbitrate the cases. *Id*. at 30. AAA effectively served as a broker, matching those seeking arbitration services with arbitrators experienced in the relevant area. AAA also was responsible for invoicing the arbitration parties and for releasing payment to Zaremski. *Ibid*. ("Upon receipt [of the bills], the AAA will release payment from the amounts deposited by the parties."). Given the obligations imposed on AAA, the Compensation Agreement does not fail for lack of consideration. And contrary to Zaremski's submission, the agreement is not rendered illusory by the fact that it exculpates AAA from liability in the event Zaremski is not paid. *See Rutter v. Arlington Park Jockey Club*, 510 F.2d 1065, 1068 (7th Cir. 1975) ("It would not be an

illusory contract to agree to provide [fire] protection but be exculpated from negligence. The contract would still require that some fire protection be rendered.").

Zaremski next argues that the Compensation Agreement is void because it was fraudulently induced. The court will assume for present purposes that there was fraudulent inducement. But fraudulent inducement renders a contract *voidable*, not void. *See Halla v. Chi. Title & Trust Co.*, 104 N.E.2d 790, 795 (Ill. 1952); *23-25 Bldg. P'ship v. Testa Produce, Inc.*, 886 N.E.2d 1156, 1163 (Ill. App. 2008). Illinois law gives two choices to contractual parties claiming fraud in the inducement: "(1) rescind the contract, or (2) waive the defect, ratify the contract, and enforce it." *23-25 Bldg. P'ship*, 886 N.E.2d at 1163. "A person who has been misled by fraud or misrepresentation is required, as soon as he learns the truth, to disaffirm or abandon the transaction with all reasonable diligence, so as to afford both parties an opportunity to be restored to their original position. If, after discovering the untruth of the representations, he conducts himself with reference to the transaction as though it were still subsisting and binding, he thereby waives all benefit of relief from the misrepresentations." *Havoco of Am., Ltd. v. Hilco, Inc.*, 731 F.2d 1282, 1288 (7th Cir. 1984) (quoting *Eisenberg v. Goldstein*, 195 N.E.2d 184, 187 (Ill. 1963)). Thus, the agreement is void on fraudulent inducement grounds only if Zaremski properly rescinded it.

The pleadings make clear that Zaremski did not rescind. "[A] party seeking to rescind a contract on the ground of fraud or misrepresentation must elect to do so promptly after learning of the fraud or misrepresentation. It is well-established that an unreasonable delay in taking the necessary steps to set aside a fraudulent agreement will have the effect of affirming it." *Hassan v. Yusuf*, 944 N.E.2d 895, 918 (Ill. App. 2011) (citations omitted); *see also Mollihan v. Stephany*,

340 N.E.2d 627, 629 (Ill. App. 1975) (party seeking to rescind "must announce his purpose and must adhere to it"). Zaremski first learned of the alleged fraud in early January 2011. At that point, he had been awaiting payment on his first invoice for over thirty days, and AAA had informed him that the parties would not be providing deposits from which AAA could disburse payment. Instead of rescinding the agreement, however, Zaremski continued as the arbitrator for nearly two months and submitted invoices for January, February, and March 2011. Zaremski did not even seek rescission in his complaint, which was filed in August 2011. The first time Zaremski mentioned rescission was on November 6, 2011, in his response to AAA's arguments for dismissing the quasi-contract claims. Doc. 18 at 5-6.

Zaremski's continued performance and delay after learning of the alleged fraud had the effect of affirming the Compensation Agreement. *See Eisenberg*, 195 N.E.2d at 186-87 (prohibiting the plaintiff from rescinding a purchase agreement nearly a year after the purchase); *City of Chicago v. Mich. Beach Hous. Coop.*, 696 N.E.2d 804, 809 (Ill. App. 1998) (prohibiting a lender from rescinding a loan where the lender continued to disburse money after learning of the borrower's fraud); *Ario v. Am. Patriot Ins. Agency, Inc.*, 2007 WL 2743204, at *8 (N.D. Ill. Sept. 7, 2007). Because Zaremski did not rescind, his relationship with AAA is governed by the agreement, and because the agreement governs their relationship, he may not pursue his quasi-contract claims.

## II. Fraud Claim (Count I)

Count I is labeled "fraudulent misrepresentation/common law fraud." Doc. 1 at p. 6. Like the quasi-contract claims, the fraud claim seeks to recover what Zaremski believes to be the unpaid balance on his invoices. The fraud claim rests on Zaremski's allegations that AAA

falsely represented to him that the arbitration parties would deposit funds in advance from which Zaremski would be paid, that he would be paid within thirty days of submitting his invoices, and that his invoices were being processed in a timely manner. *Id.* at ¶¶ 42-51.

AAA contends that the complaint fails to state a fraud claim because it alleges promissory fraud—false statements of future intent—which generally is not actionable under Illinois law. *See Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 570 (7th Cir. 2012). This general rule is subject to a very broad exception holding that promissory fraud is actionable if the plaintiff "proves that the [false statement of future intent] was part of a scheme to defraud." *Ibid.* (internal quotation marks omitted); *see also HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 682 (Ill. 1989). "To invoke the scheme exception, the plaintiff must allege and then prove that, at the time the promise was made, the defendant did not intend to fulfill it." *Wigod*, 673 F.3d at 570. The plaintiff "must be able to point to specific, objective manifestations of fraudulent intent—a scheme or device." *Bower v. Jones*, 978 F.2d 1004, 1011 (7th Cir. 1992) (internal quotation marks omitted). "Such evidence would include a pattern of fraudulent statements, or one particularly egregious fraudulent statement." *Wigod*, 673 F.3d at 570 (internal quotation marks and citations omitted). In addition, Zaremski's fraud claim must allege "with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994). "This ordinarily requires describing the 'who, what, when, where, and how' of the fraud, although the exact level of particularity that is required will necessarily differ based on the facts of the case." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011).

The three instances of fraud alleged by Zaremski fail to satisfy these requirements. First, Zaremski points to AAA's promise that he could bill the parties on a monthly basis and would be paid within thirty days. Doc. 1 at ¶ 15; Doc. 16 at 31. Because this amounts to a promise of future intent, the complaint must allege that "*at the time the promise was made*, [AAA] did not intend to fulfill it." *Wigod*, 673 F.3d at 570 (emphasis added); *see also Ass'n Benefit Servs., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 853 (7th Cir. 2007). The complaint does not allege that. It alleges only that "AAA knew that Zaremski's bills would not be paid monthly," Doc. 1 at ¶¶ 43, 48, begging the question of *when* AAA had that knowledge. To state a fraud claim based on this promise, Zaremski must allege (if he can do so while satisfying his Rule 11 obligations) that AAA did not intend to fulfill its promise at the time the promise was made.

Second, Zaremski contends that AAA misrepresented in the Compensation Agreement that the arbitration parties would make advance deposits from which Zaremski would be paid. Doc. 1 at ¶ 18. The trouble with this contention is that the agreement says no such thing. All the agreement states is that "the parties are *advised* that deposits are due 30 days prior to the first hearing" and that "[s]hould the parties fail to make deposits in a timely manner, you must determine whether to go forward or suspend the proceedings until such time as deposits have been made." Doc. 16 at 30 (emphasis added). There can be no viable fraud claim if the defendant did not say the untrue thing it is alleged to have said.

Third, Zaremski alleges that AAA repeatedly misled him into believing that it had processed his invoices and that it was working with the arbitration parties to secure payment. Doc. 1 at ¶¶ 20-37, 46-47, 49, 58. The key allegation, and the only one identifying a potential false statement by AAA, is the following:

> On April 1, 2011, Zaremski received an email from counsel for AAA …. In
> that email message, [AAA's counsel] told Zaremksi that "we have identified
> certain issues, including some errors in what you have submitted to us
> which must be corrected before final invoices can be provided to the parties
> for processing …. Until correct invoices are submitted, payment cannot
> proceed [to] the approval process." This statement is in direct contradiction
> to AAA's previous statements … indicating that the invoices were being
> processed.

*Id*. at ¶ 37. This allegation lacks the specificity required by Rule 9(b), for it does not identify which invoices contained errors. This is no minor omission. The complaint references seven separate invoices, two of which were submitted less than one month before AAA's counsel sent the April 1 email. *Id*. at ¶¶ 20, 22, 36. For all that can be discerned from the complaint, AAA's counsel may have been referring to "issues" with those two recent invoices, in which case AAA made no misrepresentations at all.

For these reasons, Zaremski's fraud claim is dismissed without prejudice. Zaremski may seek leave to file an amended complaint that attempts to replead that claim.

## III. Third-Party Beneficiary Claim (Count V)

Count V seeks recovery of the allegedly unpaid balance of the invoices on the theory that Zaremski was a third-party beneficiary to the contract between AAA and the arbitration parties. Doc. 1 at ¶¶ 77-80. The claim rests on the premise that AAA's contract with the arbitration parties "provided for the payment of arbitrator fees … to AAA for further distribution to [Zaremski]," and that "AAA failed to perform under or enforce the contract(s)," resulting in Zaremski not being paid. *Id*. at ¶¶ 77, 80.

At bottom, the third-party beneficiary claim seeks to hold AAA liable for the arbitration parties' failure to pay Zaremski. As noted above, the Compensation Agreement exculpates AAA

from such liability; it provides that AAA has "no liability, direct or indirect," for payment of arbitrators, that AAA "is authorized but not obligated to seek to collect these monies on [an arbitrator's] behalf," and that "under no circumstances whatsoever will [AAA] be liable for any failure to collect any or all the monies due." Doc. 16 at 30. Thus, as currently pleaded, Zaremski's third-party beneficiary claim must be dismissed. *See Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 249 (7th Cir. 1994) ("Illinois enforces covenants not to sue."); *Harris v. Walker*, 519 N.E.2d 917, 919 (Ill. 1988); *Haendel v. Illinois*, 1996 WL 1805020, at *8 (Ill. Ct. Cl. Apr. 22, 1996) (holding that an exculpatory clause in a contract between the plaintiff and the defendant barred the plaintiff's third-party beneficiary claim). The dismissal, however, will be without prejudice, as the court cannot foreclose the possibility that Zaremski might claim that AAA breached its contract with the arbitration parties in ways not covered by the Compensation Agreement's exculpatory clause. Doc. 19 at 10 (where Zaremski's brief implies that AAA might have failed to properly invoice the arbitration parties in the manner required by AAA's contract with those parties).

## IV. Fiduciary Duty Claim (Count VI)

Count VI is a fiduciary duty claim premised on the theory that AAA owed Zaremski a fiduciary duty to ensure that his invoices were paid. *Id*. at ¶¶ 82-83. "A fiduciary duty may be created where one party places trust and confidence in another, thereby placing the latter party in a position of influence and superiority over the former." *Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 401 (7th Cir. 2011) (internal quotation marks omitted). "The essence of a fiduciary relationship is that one party is dominated by the other. The fact that one party trusts the other is insufficient … . The dominant party must accept the responsibility, accept the trust

of the other party before a court can find a fiduciary relationship." *Pommier v. Peoples Bank Maycrest*, 967 F.2d 1115, 1119 (7th Cir. 1992). That said, "[a] slightly dominant business position does not operate to turn a formal contractual relationship into a confidential or fiduciary relationship." *Ibid*. (internal quotation marks and alterations omitted); *see also Original Great Am. Chocolate Chip Cookie Co. v. River Valley Cookies, Ltd.*, 970 F.2d 273, 280 (7th Cir. 1992); *Benson v. Stafford*, 941 N.E.2d 386, 397-98 (Ill. App. 2010); *Lagen v. Balcor Co.*, 653 N.E.2d 968, 975 (Ill. App. 1995). Relevant factors in determining whether a fiduciary relationship exists include "the degree of kinship between the parties, the disparity in age, health, education, or business experience between the parties, and the extent to which the servient party entrusted the handling of its business to the dominant party and placed its trust and confidence in it." *Benson*, 941 N.E.2d at 398. Illinois law requires a fiduciary duty plaintiff to "prove by clear and convincing evidence the existence of a fiduciary or special relationship." *Greenberger*, 631 F.3d at 401; *see also Burdett v. Miller*, 957 F.2d 1375, 1382 (7th Cir. 1992).

Zaremski has pleaded a viable fiduciary duty claim. The complaint alleges that Zaremski trusted AAA (and that AAA accepted his trust) to bill the arbitration parties and to collect payment for him. Doc. 1 at ¶ 82. The complaint further alleges that AAA forbade Zaremski from contacting the arbitration parties about his payment. *Id*. at ¶¶ 24, 40, 82. Thus, accepting the complaint's well-pleaded allegations as true, Zaremski was entirely at AAA's mercy regarding his payment, giving rise to a fiduciary duty on AAA's part. *See Tully v. McLean*, 948 N.E.2d 714, 739-40 (Ill. App. 2011) (a fiduciary relationship existed between contracting parties where the plaintiff completely trusted the defendant to manage a retail complex for the plaintiff's benefit).

AAA takes issue with the premise that Zaremski had no control over obtaining payment, arguing that he had the power to suspend the proceedings until the parties paid him. Doc. 23 at 13. This may turn out to be a convincing argument on summary judgment, but it does not persuade at the Rule 12(b)(6) stage, for it prompts the factual question whether Zaremski actually could have stalled the proceedings until he got paid. According to Zaremski, the answer to that question is "no"—the complaint alleges that he tried to suspend and cancel the proceedings as leverage, only to have AAA remove and replace him as the arbitrator. Doc. 1 at ¶¶ 31, 35, 70. This is sufficient to defeat dismissal of the fiduciary duty claim on the ground advanced by AAA.

**V.      Improper Removal Claim (Count VII)**

Count VII alleges that AAA's removal of him as an arbitrator violated an AAA rule permitting removal only if the arbitrator is "unable to perform the duties of the office." Doc. 1 at ¶¶ 71, 74. The count is styled "Declaratory Judgment," and AAA moves to dismiss it solely on the ground that Zaremski cannot seek a declaratory judgment for a past breach of contract while also seeking monetary relief for that breach. Doc. 16 at 12; Doc. 23 at 14-15. Zaremski clarified at oral argument, however, that Count VII is a breach of contract claim premised on the theory that AAA was contractually prohibited from removing him. Zaremski also explained that because he was unaware when filing the complaint that the arbitrations had been completed by another arbitrator, he sought a judgment requiring AAA to reinstate him. Having learned that the arbitrations are completed, Zaremski now says that he seeks monetary damages in the amount of the fees he would have earned had he been allowed to finish the arbitrations.

Although it might have been better had the complaint affixed a "breach of contract" label to Count VII, "[a] complaint need not identify legal theories, and specifying an incorrect theory is

not a fatal error." *Rabe v. United Air Lines, Inc.*, 636 F.3d 866, 872 (7th Cir. 2011); *see also Hatmaker v. Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010). The complaint need only allege facts establishing a plausible claim for relief. AAA's motion to dismiss provides no basis to conclude Count VII fails to do so with respect to its removal of Zaremski as an arbitrator on the Medicare Demonstration Project cases.

**Conclusion**

AAA's motion to dismiss is denied as to the fiduciary duty claim (Count VI) and the improper removal claim (Count VII). The motion is granted as to the fraud claim (Count I) and the third-party beneficiary claim (Count V), which are dismissed without prejudice, and as to the quasi-contract claims (Counts II-IV), which are dismissed with prejudice. Zaremski has until May 29, 2012, to move for leave to file an amended complaint that seeks to replead the fraud and third-party beneficiary claims.

May 9, 2012

_____
United States District Judge